CHARLES CARREON, ESQ. (127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel:  520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

Attorney for Plaintiff iCall, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICALL, INC.,  a Delaware-incorporated Corporation Licensed to do Business in California, | ) Case No.:  SACV 11-00895 JVS (ANx) ) |
| Plaintiff, | ) PLAINTIFF'S CORRECTED MOTION FOR ) ENTRY OF DEFAULT JUDGMENT AND ) PERMANENT INJUNCTION AND |
| vs. | ) IMPOUNDMENT ORDER AGAINST ) DEFENDANTS; MEMORANDUM OF |
| JULIAN CAIN and ORCHID SEED, LLC, a California Limited Liability Company, | ) POINTS AND AUTHORITIES IN ) SUPPORT THEREOF |
| Defendants. | ) ) ) DATE: October 31, 2011 ) TIME:  1:30 p.m. ) COURTROOM: 10C |

## <u>MOTION</u>

Please take notice that, pursuant to F.R.Civ.P. 55(b)(2), on October 31, 2011 at 1:30 p.m., in Courtroom 10C at 411 West Fourth Street, Santa Ana, California 92701, plaintiff will move the Court for an order entering a default judgment on the Complaint in favor of plaintiff iCall, Inc. and against defendants Julian Cain and Orchid Seed, LLC.

The grounds for the motion to enter default judgment are that defendants have failed to plead or otherwise defend the action, that plaintiff has established all procedural requisites for entry of a default judgment pursuant to Local Rule 55-1, and that the Court may properly exercise its discretion to enter a default judgment because: (1) plaintiff will be prejudiced if a default judgment is not entered, (2) plaintiff's substantive claims are meritorious, (3) plaintiff's Complaint is sufficient, (4) the sum of money at stake in the action will not be established by default, but rather by subsequent arbitration, (5) there is

no substantial dispute concerning material facts, that may be determined reliably from the written record, (6) the default was not due to excusable neglect, and (7) the entry of a default will not offend the policy favoring decisions on the merits.

Please take further notice that at the same time and place, iCall will move for entry of a permanent injunction and impoundment order.

The grounds for the entry of a permanent injunction and impoundment order are that iCall has satisfied all the requisites for granting the relief set forth in the Proposed Order Granting Permanent Injunction and Impoundment Order under the Federal Copyright Laws, the California Trade Secrets Act, the California Unfair Practices Law, and the Federal Declaratory Relief Act, as set forth in detail herein.

The undersigned counsel for plaintiff hereby certifies that he has attempted to comply with the requirement of L.R. 7-3 to attempt to confer with the opposing party before filing any motion by calling and emailing defendant Julian Cain in Canton, Georgia, and was unable to establish contact with him.

This motion is based on the attached Memorandum of Points and Authorities, the Declarations of Arlo Gilbert and Charles Carreon, the Proposed Orders submitted herewith, and on such evidence and argument as the Court may consider at any hearing on the motion.

Dated: September 29, 2011                    CHARLES CARREON, ESQ.


                                             By: s/Charles Carreon
                                             CHARLES CARREON (127139)
                                             Attorney for Plaintiff iCall, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.       **FACTS**

### A. iCall's VoIP Telecommunications Business

iCall, Inc. ("iCall") is a licensed telecommunications provider that provides telephone service using Voice-over Internet Protocol ("VoIP") technology, also known as digital telephony, a method of transmitting voice communications over the Internet.  iCall is a self-funded startup established by CEO Arlo Gilbert ("Gilbert").  (Gilbert Dec. ¶ 2.)  Gilbert created the original iCall VoIP software as a joint work with COO Andy Muldowney.  (Gilbert Dec. ¶2.)  iCall products and services are offered primarily through the company website at iCall.com.  (Gilbert Dec. ¶ 4.)  iCall has zealously protected its intellectual property, including the iCall® trademark, the iCall California Service Mark, and the iCall® software.  (Gilbert Dec. ¶ 5.)  The iCall® software operates on desktop computers and on the Apple iPhone and iPod.  (Gilbert Dec. ¶ 2.)  iCall, Inc. offers the iCall® Service in both free and paid versions, and offers wholesale VoIP solutions through iCall®Carrier Services.  (Gilbert Dec. ¶ 2.)  VoIP offers considerable cost savings for users over standard telephone service.  (Gilbert Dec. ¶ 6.)  iCall's largest competitor in the VoIP field is Skype.  (Gilbert Dec. ¶ 7.)

### B. Cain Contracted To Create Software As A Work-Made-for-Hire for iCall And Not To Assist Any Party Other Than iCall To Develop Similar Software

iCall and Skype software are not interoperable; accordingly, as alleged in paragraphs 10 – 18 of the Complaint commencing this action, on October 15, 2010, iCall contracted with Cain, a computer programmer with unique skills, to write copyrightable software code to allow iCall users to communicate with Skype users via a seamless interface.  (Complaint ¶ 23; Gilbert Dec. ¶ 7.)  The software is referred to herein as the iCall Open Peer Platform ("iCOPP" or the "iCOPP interface").  (Gilbert Dec. ¶ 8.) The Work-Made-for-Hire Agreement submitted herewith as Exhibit A (the "Agreement"), describes the software code as the "Product" in Section 1(a), quoted in relevant part as follows:

"The "Product" means a platform-independent C++ library to interconnect with Skype that will be functional in Linux in its first iteration, and suitable for back-porting to other platforms."

Pursuant to the Agreement, iCall paid Cain a $5,000 starting fee as an "incentive to begin work by the Start Date" of October 20, 2010.  (Gilbert Dec. ¶ 10.)  Once Cain had begun work, he was to bill at the rate of $65/hr.  (Gilbert Dec. ¶ 11.)  Cain estimated he could complete the code-writing project within eight forty-hour work weeks.  (Gilbert Dec. ¶ 11.)  Pursuant to the Agreement, iCall owns the iCOPP interface, and Cain may "not retain code written under this contracting relationship after the termination of the relationship."  (Gilbert Dec. ¶ 12; Exhibit A, ¶ 10.)  Cain also agreed that he would "not assist any party other than Client to develop any VoIP-related product that shall facilitate interoperability with Skype," and that he would not "attempt to solicit any business or trade from [iCall's] actual or prospective customers or business contacts," or "attempt to divert business away from [iCall]."  (Gilbert Dec. ¶ 13; Exhibit A, ¶¶ 17 and 18.)

### C. Cain Extorted Additional Compensation From iCall By Threatening To Sell The iCOPP Code To iCall's Competitors

Cain started work on October 21, 2010, and submitted bills for his work that were promptly paid in full on October 31, 2010 and November 13, 2010.  (Gilbert Dec. ¶ 14.)  Cain then engaged in a three-week work stoppage, claiming sickness, and then on December 8, 2010, Cain revealed his true intentions in an email to iCall's CEO Arlo Gilbert:

> "*I believe it's time to re-negotiate our contract.* Since my downtown [sic] *I have received numerous offers to integrate the Skype protocol into software and hardware devices.* These competitors have made offers from four times to 100 times the hourly rate that iCall is providing in compensation. *I have also received buyout offers of $185,500.00 and 2.25 million respectively to hand over all of my research, code, with agreement to not work with anyone else on this technology.*
>
> Having said that 65 per hour is no longer sufficient and with another child on the way you must understand that income is a priority for me.
>
> This technology is worth billions and these competitors have driven this fact home.

***Think this over and please see how you'd like to proceed if at all.***"
(Gilbert Dec. ¶ 15; Exhibit B, emphasis added.)

### D.  Under Economic Duress, iCall Paid Cain Additional Compensation

When Cain presented his demand to "renegotiate" the contract, iCall had already invested $80,000 in the contract and had staked much of its development and capital-raising planning on developing the iCOPP interface.  (Gilbert Dec. ¶ 16.)  Further, because of Cain's unique ability to create the iCOPP interface, iCall had no alternative source of programming talent to complete the iCOPP interface.  (Gilbert Dec. ¶ 16.)  Cain subjected iCall to economic duress, and the only option was to accede to his demands.  (Gilbert Dec. ¶ 16.)  Accordingly, on December 17, 2011, iCall paid Cain $10,000 to restart work and effective December 30, 2010, began paying him $260/hr, four times his agreed hourly rate.  (Gilbert Dec. ¶ 17.)

### E.  Cain Collected $39,185 In Excess Compensation, Then Cut Off All Communication With iCall and Absconded With The iCOPP Interface Code

Cain resumed work on the iCOPP interface in late December 2010, after receiving the additional $10,000 payment.  (Gilbert Dec. ¶ 18.)  Cain collected payment for an aggregate 127 hours of work at his quadrupled hourly rate, for which iCall made payment made on December 30, 2010, January 14, 2011, January 31, 2011 and February 18, 2011.  (Gilbert Dec. ¶ 19.)  All payments were sent by check to 3904 N. Druid, Decatur, Georgia 30033 (the "Decatur address").  (Gilbert Dec. ¶ 20.)  iCall made the last payment to Cain on February 18, 2011, in the amount of $6,500, despite the fact that Cain had not submitted any new work product to the iCall collaboration website where Cain was supposed to upload his work and record his hours.  (Gilbert Dec. ¶ 21.)  Gilbert made mention of this fact to Cain in an email, and although Cain responded via email to say that the failure to upload new work and hourly time records was an oversight, his conduct indicates that Cain absconded with the most recent iteration of the iCOPP interface code, because after that email, Cain cut off all communications with Gilbert and all other iCall employees.  (Gilbert Dec. ¶ 21, 24.)

### F. iCall Filed Suit After Cain Threatened To Further Breach the Work-For-Hire Agreement, In Order To Obtain An Order Compelling Arbitration and Injunctive Relief

On June 9, 2011, Cain sent Gilbert an email with the subject line "Skype-like," attaching "screenshots" of VoIP software that Cain says is "Skype-interoperable," explicitly stating that he wants to "deploy it" himself:

> "Arlo, What would you do with this technology?
>
> [Reply from Arlo Gilbert]  What do u suggest?
>
> [Reply from Cain]  I'm just curious as to what you'd do with it.  I'm wanting to deploy it and compete w/ skype."
>
> (Gilbert Dec. ¶ 22.)

Four days later, on June 13, 2011, Cain sent this message:

> "I've built the login code (c++). Skype put me in the corner with 5.0 but I've got it handled. Most everyone else seems to have given up on this effort except a few of us.  Do you want to finish the project?"
>
> (Gilbert Dec. ¶ 23.)

Cain was undoubtedly trying to extract yet more unearned compensation by notifying Gilbert that the iCOPP interface code was close to completion, and Cain was poised to breach the Agreement by selling, transferring or licensing it to a third party. (Gilbert Dec. ¶ 24.)

Because it was clear that Cain was not intending to honor his contractual commitments, iCall filed this action on June 15, 2011, both to recover its damages pursuant to the provisions of ¶ 24 of the Agreement, that provides for the parties to arbitrate any dispute in Los Angeles, California, and in order to "obtain injunctive relief" pursuant to the "non-competition and non-disclosure provisions of this Agreement," naming Cain's limited liability company as an additional defendant to assure that injunctive relief obtained in the action would be binding against it.[1] (Carreon Dec. ¶ 9;

---

[1] Cain is the incorporator of co-defendant Orchid Seed, LLC, a California limited liability company with a record address of 7211 Capobella, Aliso Viejo, California 92656. (Carreon Dec. ¶ 9.)  Cain is the designated agent for service of process for Orchid Seed LLC, with the same record address.  (Carreon Dec. ¶ 9.)

Exhibit A, page 4.)  Venue for the action was dictated by the contractual forum selection clause applicable to actions for both injunctive relief and arbitration of claims for damages.  (Exhibit A, ¶ 21, page 4.)

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiff submitted a prior motion for entry of default judgment on August 26, 2011 (Docket # 14), that was denied without prejudice by the Court in its Minute Order filed on September 21, 2011 (Docket # 30) for failure to comply with Local Rule 55-1. Plaintiff has corrected its errors and resubmits the motion.

Local Rule 55-1 provides:

"When application is made to the Court for a default judgment, the application shall be accompanied by a declaration in compliance with F.R.Civ.P. 55(b)(1) and/or (2) and include the following:

(a) When and against what party the default was entered;

(b) The identification of the pleading to which default was entered;

(c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

(d) That the Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply; and

(e) That notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2)."

Plaintiff has submitted a declaration in compliance with L.R. 55-1, establishing that: (a) default was entered on September 29, 2011 against both Cain and Orchid Seed, LLC via a Clerk's Entry of Default (Docket # 38); (b) default was entered on the original Complaint (Docket # 1); (c) Cain and Orchid Seed, LLC are not infants or incompetent persons; (d) the Servicemembers Civil Relief Act does not apply because Cain and Orchid Seed, LLC are not members of the active duty services of the United States military;  and (e) notice has been served on the defaulting parties in compliance with paragraph 7 of this Court's Ex Parte Order Directing Preservation of Evidence and Granting Plaintiff iCall, Inc.'s Ex Parte Application for Expedited Discovery (Docket # 13).  (Carreon Dec. ¶¶  3 – 8.)

### III.   CAIN HAS DEFAULTED, AND THIS COURT SHOULD EXERCISE ITS DISCRETION TO ENTER A DEFAULT JUDGMENT FOR ICALL

Under L.R. 3-9(a), the rules applicable to default judgments are expressly made applicable to pro se parties:

> "Natural Person Appearing Pro Se. Any party representing him or herself without an attorney must appear personally and may not delegate that duty to any other person who is not a member of the bar of this Court. A person representing him or herself without an attorney is bound by the Federal Rules, as well as by all applicable local rules. Sanctions (including default or dismissal) may be imposed for failure to comply with local rules."

The Court exercises its discretion when asked to enter a default judgment under Rule 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In *Eitel*, the Ninth Circuit articulated guidelines applicable to motions for default:

> "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

Considering each of these factors in turn:

*First*, iCall would suffer severe prejudice if a default judgment were denied, because iCall would suffer irreparable harm due to the loss of a unique, trade secret protected product that it contracted with Cain to create in order to obtain a "first mover" advantage in the field of Skype interoperability, and further, would be left without a remedy for the substantial monetary damages it has suffered.[2]  (Gilbert Dec. ¶¶ 9, 26.) iCall would be deprived of all means to obtain the iCOPP  interface code, and Cain's

---

[2] Irreparable harm due to contractual breach may be cured by injunctive relief.  For further discussion, *see* section IV.C.4 *infra, quoting* Schwarzer, Wallace & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. § 13:68 (The Rutter Group 2011), *citing Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 908-909 (2nd Cir. 1990) and *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37-38 (2nd Cir. 1995).

strategy for avoiding all of his legal duties under the Work-for-Hire Agreement and the copyright laws, while pocketing all of the benefits, would be vindicated.  Cain would succeed in making a mockery of this Court's authority and of iCall's diligent reliance upon the law to seek a remedy for Cain's flagrant misconduct.

*Second*, as discussed in greater detail in section IV, *infra*, iCall's claims are all meritorious.  iCall seeks only injunctive relief in this action, as the Work-for-Hire Agreement reserved for federal court decision all claims for injunctive relief, and directed that claims for damages be subject to arbitration.  (Exhibit A.)  Because iCall's claims for relief are meritorious, injunctive relief should be granted as prayed in the Complaint.

*Third*, the Complaint is more than sufficient.  It recites all the relevant facts, and as set forth in section IV, *infra*, specifies in detail the relief sought. The defendants received adequate notice of the facts on which iCall bases its claim, and of the consequences of failing to make an appearance in the action.

*Fourth*, the *Eitel* factor requiring consideration of "the sum of money at stake in the action" is of diminished importance in this case, because that issue will not be determined upon default.  Since iCall requests that its claims for damages be ordered to arbitration, where the defendants may appear to present evidence and affect the outcome; thus, the Court is not being asked to levy any amount of damages on defendants.

*Fifth*, the facts relevant to plaintiff's claims may be determined from the documentary evidence submitted by plaintiff in this motion, and no substantial dispute can exist regarding the terms of the Work-for-Hire Agreement, iCall's rights thereunder, and Cain's breach thereof by his refusal to deliver the iCOPP interface code.  Further, as noted above, there will be a further opportunity to determine disputed facts regarding damages in arbitration.

*Sixth*, defendant's failure to file a response to the complaint is not excusable.

*Seventh*, there is nothing further that the plaintiff or this Court can do to seek a determination on the merits, and this motion provides sufficient facts for the Court to adjudicate the matter fairly in plaintiff's favor.

Therefore, reviewing the seven factors set forth in *Eitel v. McCool*, 782 F.2d 1470, *supra,* this Court may be certain that it will be properly exercising its discretion by granting a default judgment against defendants, and issuing the orders granting injunctive relief submitted herewith for the Court's issuance.

## IV. THE COURT SHOULD ISSUE A PERMANENT INJUNCTION GRANTING THE EQUITABLE RELIEF PRAYED IN THE COMPLAINT AND ORDERING THE DAMAGES CLAIMS TO ARBITRATION

### A. The Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction of this action on both federal question and diversity grounds.

Federal question jurisdiction exists under 28 U.S.C. § 1338(a) because the action arises under the copyright laws of the United States. *Peter Starr Prod. Co. v. Twin Continental Films,* 783 F.2d 1440, 1443 (9th Cir. 1986).

There is diversity jurisdiction under 28 U.S.C. § 1332. iCall, Inc. is a Delaware corporation with its corporate headquarters in Texas. (Gilbert Dec. ¶ 2.) Cain is a resident of Georgia. (Carreon Dec. ¶ 9.) Because Cain owns defendant Orchid Seed, LLC, the residence of his limited liability company is also in Georgia. "We hold that LLCs have the citizenship of all of their owners/members and that the parties here satisfy the requirements for diversity of citizenship under 28 U.S.C. § 1332." *Johnson v. Acolumbia Properties Anchorage,* LP, 437 F.3d 894, 902 (9th Cir. 2006). The amount in controversy in this matter exceeds $75,000 and the full amount of contract damages and attorneys fees will substantially exceed $75,000. (Gilbert Dec. ¶ 27.) Attorneys fees are included in calculating the amount in controversy. *Lowdermilk v. U.S. Bank national Association,* 479 F.3d 994, 1004 (9th Cir. 2007).

### B. iCall's Complaint Specifically Each Item of Injunctive Relief Sought By This Motion

The Complaint alleges four claims for equitable relief: (1) To Enjoin Copyright Infringement and Compel Delivery of the Entire Work For Hire; (2) To Enjoin Misappropriation of Trade Secrets; (3) To Enjoin Unfair Competition in Violation of Cal.

B. & P. Code § 17200; and, (4) For Declaratory Relief Pursuant to 28 U.S.C. §§ 2201 and 2002. (Docket # 1.)

iCall's prayer requests entry of judgment against Cain and Orchid Seed on the first four claims for equitable relief,[3] essentially as follows:

> "1.    Issuing an Order enjoining Cain and Orchid Seed, LLC, pursuant to 17 U.S.C. § 503, from infringing iCall's copyright in iCOPP by reproducing, displaying, operating, offering to sell, or transferring derivative works based upon iCOPP to any party other than iCall;
>
> 2.    Issuing an Order compelling Cain and/or Orchid Seed, LLC to deliver to iCall all derivative versions of the iCOPP software, and all software code that Can has produced that falls within the specification of the Product as defined in Paragraph 1(a) of the Agreement, to wit, "a platform-independent C++ library to interconnect with Skype that will be functional in Linux in its first iteration, and suitable for back-porting to other platforms."
>
> 3.    Issuing an Order by which Cain and/or Orchid Seed, LLC are commanded, enjoined, and restrained:
>> a.  From incorporating into, or using iCall's Trade Secrets to manufacture, offer to sell, or sell products or services incorporating, using, or made using iCall's Trade Secrets, or to disclose iCall's Trade Secrets;
>> b.  Immediately to preserve and return to iCall or to this Court (i) all information, including trade secret and other confidential or proprietary information improperly acquired from iCall; (ii) all materials (in paper, electronic, or any other form) containing any, or derived from, such trade secrets or other confidential or proprietary information; and (iii) all copies of such materials;
>> c.  Immediately to deliver, pursuant to Cal Civil Code § 3426.3(c),[4] the Product and all code comprising it in whole or in part, in all its various iterations, without exception; and,

---

[3] The Sixth, Seventh and Eighth Claims for Relief are arbitrable.

[4] iCall intended here to refer to Cal. Civil Code § 3426.2(c), that provides: "In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."

d.  To turn over to the Court any proceeds Cain and/or Orchid Seed, LLC have received from the misappropriation of iCall's Trade Secrets, to be held in constructive trust until the conclusion of this litigation…."

iCall also requested, *inter alia*, under its claim for Declaratory Relief, a decree holding that "Cain is obliged under the Agreement to deliver to iCall the Product and all code comprising it in whole or in part, in all its various iterations, without exception…."

Accordingly, the Complaint provided defendants with full and adequate notice of the relief that iCall seeks by this motion.

### C.  iCall's Claims For Equitable Relief Are Meritorious, and The Court May Properly Issue The Proposed Permanent Injunction

#### 1.  iCall Is Entitled To An Order Enjoining Cain From Committing Acts of Copyright Infringement and Impounding All Copies of the iCOPP Interface Code, Including Derivative Versions

##### a.  iCall Registered Its Copyright In the iCOPP Code

Pursuant to the Work-for-Hire Agreement, iCall is the author of the iCOPP interface code, that it registered with the U.S. Copyright Office on June 2, 2011.  (Gilbert Dec. ¶ 24; Exhibit E, Registration # TXu 1-739-380.)  Registration of iCall's copyright establishes the pre-requisite for filing this action under 17 U.S.C. § 411.  Reed *Elsevier, Inc. v. Muchnick,* 130 S.Ct. 1237, 1248 (2010) (registration is pre-requisite to filing copyright suit, although not "jurisdictional").

##### b.  Cain Is A Proper Copyright Defendant

The Work-for-Hire Agreement gave Cain, at most, a limited license to possess the iCOPP interface code so long as he was working on it, and upon completion of the "Product," he was obliged to deliver the iCOPP interface code to iCall and surrender any and all copies in his possession, absent a written agreement allowing him to retain it. (Gilbert Dec. ¶ 9; Exhibit A, ¶ 16.)  Accordingly, Cain is a proper copyright defendant. *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1087-1088 (9th Circ. 1989); *accord, Jacobsen v. Katzer,* 535 F.3d 1373, 1380 (Fed. Cir. 2008) (licensee may sue for copyright infringement when licensee exceeds scope of limited license).

### c.   Cain Is Liable For Copyright Infringement

"To prevail on a claim of copyright infringement, a plaintiff must prove ownership of a copyright and 'copying of protectable expression' beyond the scope of a license." *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 517 (9th Cir. 1993).[5] "The word 'copying' is shorthand for infringing any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106" *S.O.S., supra,* 886 F.2d 1081 at n. 3. "Copying" occurs whenever a copy of a computer program is made in digital memory, however evanescently. *Accord, DocMagic, Inc. v. Ellie Mae, Inc.,* 745 F.Supp. 2d 1119, 1148 (N.D. Cal. 2010) and *Ticketmaster LLC v. RMG Technologies, Inc.,* 507 F.Supp. 2d 1096, 1106 (Central District Cal. 2007), *citing MAI Systems, supra,* 991 F.2d at 519.  Cain has affirmatively declared, in non-hearsay admissions, that he has kept a copy of the iCOPP code on his computer.  (Gilbert Dec. ¶¶ 22 - 23; Exhibits C and D.)  Because Cain's sole right to possess a copy of the iCOPP code was based on his compliance with the terms of the Work-for-Hire Agreement that has been terminated by breach, he is liable for infringement based on his act of "copying" the iCOPP code.

As the registered author of the iCOPP interface code, iCall holds the sole right to possess, copy, and distribute derivative versions of the software.  17 U.S.C. § 106(2). As noted in the factual recitation *supra* at section I. F. of this brief, Cain has also admitted to keeping a derivative version of the iCOPP code on his computer that more closely fits the description of the "Product" in the Work-for-Hire Agreement.  (Gilbert Dec. ¶ 23; Exhibit D.)  Cain's possession and withholding of this derivative version of the iCOPP code is a further act of infringement that is causing iCall irreparable harm.  (Gilbert Dec. ¶ 26.)

/ / /

---

[5] *Vernor v. Autodesk, Inc.* 555 F.Supp. 2d 1164 (W.D. Washington 2008) expressed disagreement with a portion of the holding in MAI, on a point of law not implicated by this motion.

### d.  An Order Should Issue Under F.R.Civ.P. 65 Enjoining Cain's Infringement and Impounding All Copies of the iCOPP Code and All Derivative Works Based Upon It

The United States Supreme Court has stated:

"The Copyright Act provides the owner of a copyright with a potent arsenal of remedies against an infringer of his work, ***including an injunction to restrain the infringer from violating his rights, the impoundment … of all reproductions of his work made in violation of his rights,*** a recovery of his actual damages and any additional profits realized by the infringer or a recovery of statutory damages, and attorney's fees."

*Sony Corp of America v. Universal City Studios, Inc.,* 464 U.S. 417, 433 – 434 (1984), *citing* 17 U.S.C. §§ 502 – 505 (emphasis added).

A copyright injunction and impoundment order must comply with subsection (d) of Rule 65, that requires that "every order granting an injunction" comply with three requirements, to wit, it must (a) "state the reasons why it issued," (b) "state its terms specifically," and (c) describe in reasonable detail the "acts restrained or required," without "referring to the complaint or other document."  Rule 65(d).  The Proposed Order submitted herewith scrupulously complies with these requirements.

iCall has a statutory right to impound infringing copies and machines used to manufacture them, subject to this Court's discretion.  This Court is authorized to "order the impounding, on such terms as it may deem reasonable … all copies … claimed to have been made or used in violation of the exclusive right of the copyright owner," and of all "other articles by means of which such copies … may be reproduced." 17 U.S.C. § 503(a)(1)(A) – (B).  "[R]ecords documenting the manufacture, sale, or receipt of things involved in any such violation," may also be impounded, "provided that any records seized under this paragraph shall be taken into the custody of the court." 17 U.S.C. § 503(a)(1)(C).  Seized records shall be subject to a "protective order … to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used."  17 U.S.C. § 503(a)(2).

---

Procedurally, impoundment is governed by Rule 65(f).[6]  Established precedent in this Circuit allows the impoundment not only of copyrighted material, but also of the instrumentalities used to commit the acts of infringement.  *Eg.,   Duchess Music Corporation v. Stern,* 458 F.2d 1305 (9th Cir. 1972).

An impoundment order is particularly appropriate in this case, where both Cain's infringement of iCall's rights and his refusal to cooperate with this proceeding, are transparently clear.  Since iCall has been utterly unable to engage Cain cooperatively in the legal process, despite sending its attorney and CEO directly to Cain's door, it is apparent that an impoundment order must issue in order to overcome his truculent resistance to this Court's authority.

### 2.  iCall Is Entitled To An Order Enjoining Cain From Misappropriating iCall's Trade Secrets and Affirmatively Ordering Him To Turn Over The iCOPP Interface Code

The theft of trade secrets may be enjoined under California law applicable to this proceeding.  Cal. Civil Code § 3426.2(a) provides that "[a]ctual or threatened misappropriation [of trade secrets] may be enjoined."  Subsection (c) provides:  "In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."  An action for copyright infringement may be joined with an action to enjoin misappropriation of trade secrets, and relief may be granted under both theories in a single injunction.  *Eg., Bridge Publications, Inc. v. Vien,* 827 F.Supp. 629 (S.D. Cal. 1993).

> "California Civil Code section 3426.1 defines a 'trade secret' as ***information which has independent economic value from not being generally known, the secrecy of which has been reasonably protected***, or reasonably attempted to be protected. ***A trade secret is misappropriated when, among other things, it is disclosed or used by another without consent, and*** at the time of disclosure or use that person knew the secret

---

[6] Subsection (f) was added to Rule 65 by amendment in 2001, replacing "the antiquated Copyright Rules of Practice" that had been in effect since 1909, and bringing impoundment practice into harmony with "contemporary requirements of due process."  *Notes of Advisory Committee on 2001 Amendments to Rules.*  However, plaintiff has not found any case indicating disapproval of pre-2001 impoundment precedents cited herein.

was acquired *under circumstances giving rise to a duty to maintain its secrecy or limit its use.*"

*Bridge Publications, supra,* 827 F.Supp. at 632 (emphasis added).

The iCOPP code has economic value because the secret of Skype interoperability is not publicly known.  (Gilbert Dec. ¶ 9.)  iCall has reasonably protected the secrecy of the iCOPP code. (Gilbert Dec. ¶ 9.)

Cain knew the iCOPP code was a trade secret, because in ¶ 16(a) of the Work-for-Hire Agreement, he agreed not to disclose "Confidential Information," identified *inter alia* as "written materials such as computer … software, disks, documents, files [and] ideas, research, processes, practices or know-how."  Cain promised that on "termination of the contracting relationship, or upon [iCall's] request, [Cain] will immediately return all confidential information and materials … including … electronic copies of any confidential documents in any medium or location."  Pursuant to subsection (f) of ¶ 16, Cain agreed that he was "in a position of confidence and trust … and that if he threatens to breach, or breaches this Agreement, [iCall] … will sustain irreparable harm…."  Pursuant to ¶ 22 of the Work-for-Hire Agreement, Cain further "acknowledges and agrees that if he breaches or threatens to breach any of the non-disclosure or non-competition terms of this Agreement, [iCall] will sustain irreparable harm and will be entitled to obtain an injunction…"  These contractual provisions, to which Cain expressly agreed by signing the Work-for-Hire Agreement, gave rise "to a duty to maintain the secrecy" of the iCOPP code.

In email exchanges with Gilbert, Cain has admitted breaching his duty to preserve the secrecy of the iCOPP code to competitors on at least one occasion, and threatening to do so on another.  (Gilbert Dec. ¶¶ 15 and 23; Exhibits C and D.)  Accordingly, pursuant to Cal. Civil Code § 3426.2(a), further misappropriations must be enjoined.  Additionally, under Cal. Civil Code § 3426.2(c), this Court would be well within its discretion to affirmatively order Cain to deliver the iCOPP code, in its original form and all derivative versions thereof, to iCall.

### 3.  iCall Is Entitled To An Order Under B. & P. Code § 17203 Restoring the iCOPP Code to iCall's Possession, Enjoining Cain From Further Acts of Unfair Competition, and Imposing A Constructive Trust Upon Ill-Gotten Gains

"[T]he misappropriation branch of California unfair competition law" is drawn from "federal common law formulated in *International News Service v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed.2d 211 (1918)." *Toho Co., Ltd., v. Sears, Roebuck & Co.,* 645 F.2d 788, 794 (9th Cir. 1981).

*International News* "held that the International News Service behaved tortiously when it copied the substance of AP's uncopyrightable news stories from AP's newspaper-subscribers on the East Coast and wired the stories to International's West Coast Subscribers." *Toho,* at id.  The "California doctrine of misappropriation prohibits the substantial copying of another's commercial labors [and] has been applied to record and tape piracy."  *Toho, supra,* at id., *citing A & M Records, Inc. v. Heilman,* 75 Cal.App.3d 554, 564, 142 Cal.Rptr. 390, 396 (1977), *appeal dismissed and cert. denied*, 436 U.S. 952, 98 S.Ct. 3063, 57 L.Ed.2d 1118 (1978); *Capitol Records, Inc. v. Erickson,* 2 Cal.App.3d 526, 536-38, 82 Cal.Rptr. 798, 805-06 (1969), *cert. denied,* 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970).

Because iCall is the statutory author of the iCOPP code, of which Cain is the mere amanuensis, the rule of *International News* applies equally in this current age of distributed information, as it did nearly a hundred years ago:

> "Stripped of all disguises, the process amounts to an unauthorized ***interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense*** of gathering the news. The transaction speaks for itself, and a court of equity ought not to hesitate long in characterizing it as unfair competition in business."

*International News Service,* 248 U.S. at 240 (emphasis added).

In *A&M Records, supra,* the Second Appellate District held that where the defendant "admitted … that without authorization duplicated performances owned by A&M Records in order to resell them for a profit," his conduct "unquestionably constitutes unfair competition…." *A&M Records,* 75 Cal.App.3d at 564.

*A&M Records* was decided under Civil Code § 3369(3), from which California Unfair Competition Law codified at Business & Professions Code §§ 17200 et. seq. "evolved." *Kraus v. Trinity Mgmt. Svcs., Inc.* 23 Cal.4th 116, 96 Cal.Rptr.2d 485, 494 (2000).   Business & Professions Code § 17203 authorizes this Court to issue a thorough-going injunction to remedy Cain's acts of misappropriation by means of unfair competition:

> "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. ***The court may make such orders or judgments,*** including the appointment of a receiver, ***as may be necessary to*** prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to ***restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.***"   (Emphasis added.)

Under the statutory authority of Section 17203, this Court may compel Cain to deliver the iCOPP code, enjoin him from further efforts to sell the code to iCall's competition, and impose a constructive trust upon all property derived from "proceeds from the sale of property belonging to another."[7]  *A & M Records, supra,* 75 Cal.App.3d at 570.

/ / /

/ / /

/ / /

----

[7] iCall has proven that Cain has attempted to sell the iCOPP software to a third party, but has no evidence that he actually sold it.  However iCall's entitlement to the disgorgement remedy should be incorporated into the judgment, so that as discovery and post-judgment enforcement proceed, the judgment may be amended to sequester assets traceable to Cain's profits from wrongful acts.

**4. iCall Is Entitled To A Decree Establishing Its Exclusive Right to Use and Possession of The iCOPP Interface Code to Avoid Irreparable Harm to iCall Due To Loss of Possession of the iCOPP Code and A Unique Business Opportunity to Expand Its Business**

The Federal Declaratory Judgment Act provides in relevant part:

"In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C. § 2201(a).

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

28 U.S.C. § 2202.

This Court is authorized to determine the rights of the parties to a contract. *Eg., American States Ins. Co. v. Kearns,* 15 F.3d 142 (9th Cir. 1994). To be cognizable, the claim must present an actual dispute. *American States, supra*, 15 F.3d at 143. The Court's jurisdiction over a declaratory judgment claim is discretionary. *American States, supra*, 15 F.3d at 144.

The Court determines whether to exercise its jurisdiction by balancing "concerns of judicial administration, comity, and fairness to the litigants." *American States, supra*, 15 F.3d at 144. In this case, it will serve all three of these purposes for the Court to make a declaration under Section 2201 that the Work-for-Hire Agreement secures to iCall all the rights of authorship of the iCOPP code, that iCall is entitled to possession of the iCOPP code, and that Cain is obligated to deliver the code and all derivative versions thereof. An order directing Cain to deliver the code to iCall is merited to avoid irreparable harm that will result from allowing Cain to keep the code.

"Wrongful conduct that deprives plaintiff of a unique product or contract right (one for which there is no substitute) may constitute irreparable injury where damages would be difficult to quantify at trial. *** Irreparable harm may also be found where defendant wrongfully deprives plaintiff of a

unique product or contract right that would allow plaintiff to expand its business; e.g., by … creating an opportunity to expand."

Schwarzer, Wallace & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. § 13:68 (The Rutter Group 2011), *citing Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 908-909 (2nd Cir. 1990) and *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37-38 (2nd Cir. 1995).

"Irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial [therefore] we have found irreparable harm [where] the very viability of the plaintiff's business [citation] or substantial losses of sales beyond those of the terminated product [citation] have been threatened."

*Tom Doherty Associates, supra,* 60 F.3d at 37-38.

The iCOPP code is a unique product that iCall has developed in order to expand its business, and by refusing to deliver it to iCall, Cain is causing irreparable injury by depriving iCall of the opportunity to be the "first mover" in the field of Skype interoperability.  (Gilbert Dec. ¶ 26.)  The loss of this opportunity presents a threat to iCall's viability and will cause a financial loss that will be very large, but impossible to quantify.  (Gilbert Dec. ¶ 26.)

Finally, if iCall loses its "first mover" advantage in the field of Skype interoperability due to Cain's obstinate refusal to deliver the iCOPP code, Cain will be exposed to an astronomical damage award for causing iCall to suffer entirely foreseeable consequential damages resulting from the inability to roll out an iCall/Skype interoperability program.  (Gilbert Dec. ¶¶ 26 - 28.)  By ordering Cain to turn over the iCOPP code instanter, this Court will aid iCall's diligent efforts to mitigate damages, and reduce the amount of damages for which Cain will become liable in arbitration.  (Gilbert Dec. ¶ 28.)  Accordingly, a mandatory injunction under 28 U.S.C. § 2202, compelling Cain to deliver the iCOPP code to iCall, is necessary and may properly be issued.

### 5.  iCall Is Entitled To An Order Compelling Arbitration of Its Fifth, Sixth and Seventh Claims For Damages

iCall's Complaint pleads arbitrable claims as its Fifth, Sixth and Seventh Claims for Relief.  In items 5 and 6 of iCall's prayer for relief, it requests the Court to issue an order directing Cain to submit these claims to arbitration.  Cain's time to respond to the

Complaint expired on July 28, 2011, as set forth *supra* in section II.A.  Under the Federal Arbitration Act, 9 U.S.C. § 4, et seq., "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  This Court can easily determine that the Work-for-Hire Agreement requires arbitration of damages claims from a brief review of the contract.  (Exhibit A, ¶ 24.)  And given Cain's complete failure to participate in this proceeding, it is clear that he is failing to comply therewith.  Thus, the Court is required to order this matter to arbitration.

## V.    CONCLUSION

All of the factors this Court must consider under *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986), weigh in favor of granting the default judgment.  Cain and Orchid Seed LLC received adequate notice of iCall's meritorious claims under Federal Copyright law, California Trade Secret and Unfair Competition law, the Federal Declaratory Judgment Act and the Federal Arbitration Act, as alleged in a detailed and sufficient Complaint with which both defendants were lawfully served effective July 8, 2011.  The defendants' failure to respond to the Complaint cannot be characterized as due to excusable neglect.  The sum of money at stake in the action will be established by subsequent arbitration, and not in this default proceeding.  The material facts are not in substantial dispute, and can be determined reliably from the written record.  Finally, given that the defendants have had a full and fair opportunity to respond to the allegations herein, and apparently do not intend to avail themselves of the opportunity to present opposition to iCall's claims.  iCall has exhausted every avenue for obtaining an adjudication on the merits of its claims for injunctive relief, therefore, the entry of a default will not offend the policy favoring decisions on the merits.  Rather, entry of a default judgment will do equity between the parties, avoid prejudice to iCall, and serve the cause of efficient judicial administration.  This Court is therefore respectfully

requested to enter a default judgment, permanent injunction, and order compelling arbitration in the form submitted herewith.

Dated:  September 29, 2011                    CHARLES CARREON, ESQ.


                                              By:      s/Charles Carreon
                                              CHARLES CARREON (127139)
                                              Attorney for Plaintiff iCall, Inc.

<u>PROOF OF SERVICE</u>

I am a citizen of the United States with a business address of 2165 S. Avenida Planeta.  I am over the age of 18 years, and not a party to the within action.  I declare that, on the date subscribed below, I served the following document described as

upon the defendant herein by the method(s) described below:

Julian Cain
[REDACTED per General Order 10-07]
Canton, GA 30115-8137

julian@junglecat.org

☐   by email to the above-referenced email address

☐   by personal delivery to the above-referenced addresses

☐   by placing the same in envelopes addressed to the above recipient, U.S. Priority Mail, with postage fully prepaid, deposited into an official mailbox located in Tucson, Arizona.

☐   by Federal Express for overnight delivery.

Executed at Tucson, Arizona, on _____.

_____
CHARLES CARREON